IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Anthony Tyrone Kelly, #245916, )<br>)<br>      Petitioner, )<br>)<br>  vs. )<br>)<br>South Carolina Department of )<br>Corrections; Colie L. Rushton, Warden )<br>of McCormick Correctional Institution; )<br>and Henry McMaster, Attorney General )<br>of South Carolina, )<br>)<br>      Respondents. )<br>              ) | Civil Action No. 8:05-0454-HFF-BHH<br><br>**REPORT OF MAGISTRATE JUDGE** |

  The petitioner, Anthony Tyrone Kelly, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. The respondents have filed a motion for summary judgment seeking dismissal of the petition.

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

## PROCEDURAL HISTORY AND FACTS PRESENTED

### CONVICTION AND DIRECT APPEAL

  The petitioner is presently confined to McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Greenville County. At the August 1997 term, the Grand Jury for Greenville County indicted The petitioner for murder (97-GS-23-5992) and possession of a firearm or knife during commission of a violent crime (97-GS-39-5988). (R. at 489-94.)

  The petitioner was represented at the trial level by John Rollins, Esquire. The Honorable Henry F. Floyd conducted a jury trial of the petitioner from December 8, 1997 to December 10, 1997. The jury convicted the petitioner of the lesser included offense of voluntary manslaughter on the murder indictment, and found him guilty as charged on the possession of a weapon indictment. (R. at 365.) Judge Floyd then sentenced the

petitioner to twenty (20) years for manslaughter and a concurrent five (5) years for possession. (R. at 369-70.)

### DIRECT APPEAL

A timely notice of appeal was filed with the Supreme Court of South Carolina. Assistant Appellate Defender Robert Dudek, of the South Carolina Office of Appellate Defense, was appointed to represent the petitioner during the direct appeal. On June 1, 1999, Dudek filed a "no merit" Anders Brief of Appellant and Petition to be Relieved as Counsel, in which he asserted the following issue on behalf of the petitioner:

> Whether the judge erred by refusing to allow defense counsel to impeach James Mayes, Jr., with the fact charges against him for resisting arrest and possession with intent to distribute narcotics had been dismissed by the solicitor, since this favorable treatment by the state was probative of his bias and motive to misrepresent his testimony in favor of the prosecution?

(R. at 372.)

However, by Order dated May 30, 2000, the state supreme court denied the petition to be relieved as counsel and ordered briefing on the following issue:

> Did the trial court err by refusing to allow defense counsel to question a prosecution witness regarding preferential treatment he may have received in exchange for his testimony?

Dudek then submitted a Final Brief of Appellant dated August 18, 2000, in which he raised the following issue:

> Did the trial court err by refusing to allow defense counsel to question a prosecution witness regarding preferential treatment he may have received in exchange for his testimony?

(R. at 387.) The State filed a Final Brief of Respondent dated October 18, 2000. (R. at 400.).

Following oral argument in the case on January 11, 2001, the state supreme court issued an opinion dated February 6, 2001 in which it affirmed the convictions and sentences. (R. at 414.) The Remittitur was sent down on February 23, 2001.

**PCR APPLICATION**

The petitioner next filed an Application for Post-Conviction Relief ("APCR") until June 8, 2001 (01-CP-23-3647). In his Application, the petitioner raised the following claims:

> The Applicant's trial lawyer failed to adequately investigate the charges against him, failed to investigate and prepare potential witnesses for the defense, failed to research and prepare available defenses to the charges against the Applicant, counsel failed to make certain motions and objections which would have benefited his defense, counsel failed to object to trial error, counsel failed to make appropriate requests to charge on applicable law.

(R. at 416.)   On May 1s, 2002, the petitioner filed a *pro se* "Amended PCR Application", in which he added the following claims:

> (1) I would content the General Sessions Court did not have subject matter jurisdiction to entertain my case and sentence me, thus violating my due process, precedural due process and equal protection rights under the S.C. Const. Art. I § 3, and the 14th Amendment to the U.S. Constitution.
>
> (2) I would contend I received ineffective assistance of trial counsel, thus violating my rights under the S.C. Const. Art. I §§ 3 and 14, and the 6th and 14th Amendments to the U.S. Constitution.
>
> (3) I would contend I received ineffective assistance of appellant court counsel, thus violating my rights under the S.C. Const. Art. I §§ 3 and 14, and the 6th and 14th Amendments to the U.S. Constitution.

(R. at 422.)  The State filed a Return dated December 16, 2002.  (R. at 431.)

An evidentiary hearing in the petitioner's APCR was held before the Honorable Edward Miller on March 27th, 2003.  (R. at 435.)  The petitioner was present and represented by his counsel Jeffrey Merriam.  Testifying at the hearing were both the petitioner and trial counsel.  Judge Miller orally denied relief at the hearing, and subsequently signed a Order of Dismissal dated May 5, 2003.  (R. at 483.)

**PCR APPEAL**

A timely notice of appeal from Judge Williams's Order of Dismissal was filed with the South Carolina Supreme Court.  Assistant Appellate Defender Tara S. Taggart, of the South Carolina Office of Appellate Defense, was appointed to represent the petitioner

during the PCR appeal.  On January 20, 2004, Taggart filed a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she asserted the following issue on behalf of the petitioner:

> Trial counsel was ineffective for failing to ask for a jury charge on involuntary manslaughter.

The State filed a letter Return to the certiorari petition dated January 21, 2004.  On December 1, 2004, the South Carolina Supreme Court issued an Order denying the certiorari petition and granting the motion to be relieved as counsel.  The Remittitur was sent down on December 17, 2004.

#### FEDERAL HABEAS CORPUS PETITION

The present habeas corpus petition was filed on February 18, 2005.  Accordingly, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply to this case.  Lindh v. Murphy, 117 S. Ct. 2059 (1997). The respondents filed a motion for summary judgment on May 16, 2005.

## LAW AND ANAYLSIS

### Liberal Construction of *Pro Se* Complaint

The petitioner brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999).  A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**SUMMARY JUDGMENT STANDARD OF REVIEW**

The requirement of liberal construction does not mean that the court can assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## **DISCUSSION**

**I.    INNEFECTIVE ASSISTANCE OF COUNSEL**

In his first claim for relief, the petitioner alleges ineffective assistance. The petitioner's claim states as follows:

> Whether trial counsel was ineffective for failing to ask for a jury trial on involuntary manslaughter. The Petitioner was home. Petitioner was threatened and walked away and was approached forcefully and inflicted bodily harm. The option for the jury was self-defense, voluntary manslaughter or murder. The element of involuntary manslaughter was not in the charge to the jury. Counsel was ineffective and this deprived Petitioner of the lesser included offense where the evidence supported such a charge.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient

5

performance actually prejudiced him. Review of counsel's performance is "highly deferential." *Id.* at 689. In addition, competency is measured against what an objectively reasonable attorney would have done under the circumstances. *See id.* at 687-88. Counsel are afforded a strong presumption that their performance was within the broad range of professionally competent assistance. *See id*. at 689. Courts are reluctant to second guess the trial tactics of trial lawyers. Where counsel articulates valid reasons for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. *See Daniels v. Lee*, 316 F.3d 477, 491 (4th Cir. 2003); *Stokes v. State*, 419 S.E.2d 778, 779 (S.C. 1992).

The respondents first contend that this ground turns on an issue of state law, which is not properly reviewable on a habeas petition. Specifically, the PCR court ruled that the facts of this case did not warrant a charge of involuntary manslaughter under South Carolina law, and the state supreme court denied certiorari. The respondents emphasize that this state court determination on a purely state law issue is not reviewable in federal habeas corpus. See generally Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998) (citing Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir.1976), which held that a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary").

The petitioner, however, has framed his claim as one of ineffective assistance of counsel rather than a direct challenge to a determination of a state law issue, although, in this instance, the former necessarily implicates the latter. Notwithstanding, when the constitutional right at issue concerns the possible ineffective assistance of counsel, the Court "may consider state issues that counsel did not pursue in light of Strickland's requirements." *See Salyer v. Sternes*, 34 Fed. Appx. 238, 240 (7th Cir. 2002) (citing *Mason*

6

*v. Hanks*, 97 F.3d 887, 894 (7th Cir.1996)). Accordingly, the petitioner's claim is appropriate for habeas review.

The Court disagrees, however, that the petitioner's counsel was ineffective for failing to request a jury charge for involuntary manslaughter. An instruction on involuntary manslaughter was not justified under any view of the testimony in the case. In South Carolina, involuntary manslaughter is defined as follows:

> (1) the killing of another without malice and unintentionally, but while one is engaged in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or
>
> (2) the killing of another without malice and unintentionally, but while one is acting lawfully with reckless disregard of the safety of others.

*State v. Burriss*, 513 S.E.2d 104 (1999) (citing *State v. Tucker*, 478 S.E.2d 260 (1996)). A charge for involuntary manslaughter is properly refused if there is no evidence which would support such a finding. *Burriss*, 513 S.E.2d at 109.

Thus, the crux of involuntary manslaughter is that the act was *unintentional*. There is no evidence that the petitioner's actions were unintentional or accidental. *Id*. In his statement to police the petitioner described various disagreements with the victim, culminating as follows:

> He came out of the house and came to me still talking junk. My mind just went blank and I pulled my 25 automatic out and shot him. I emptied the gun which had six [bullets] in it.

(R. at 162.) During his testimony at trial, the petitioner was generally consistent with his statement:

> PETITIONER: . . . [H]e was coming at me in a forceful way like he want to do something. So about the time he pushed me, you know, it all happened so quick, I reached in my pocket and pulled out the gun and I started shooting.

(R. at 271.)

> DEFENSE ATTORNEY: When you shot him what were you trying to do?

7

> PETITIONER: You know, I was trying to get him up off me. . . . I felt that my life was already – it's already been threatened. I felt it was in danger.

(R. at 272.) On cross examination by the solicitor, the petitioner again admitted that he told the truth when he stated that he pulled out his pistol and shot the victim. (R. at 282.)

The factual question in this case was whether the petitioner's state of mind at the moment of the intentional shooting amounted to self-defense, voluntary manslaughter, or murder – not whether the shooting itself was intentional or not. Since there was no testimony or evidence whatsoever at trial that the shooting was unintentional – but instead, testimony, from the petitioner himself, that it was absolutely deliberate and sustained, regardless of motivation – then involuntary manslaughter was not a viable option even in the light most favorable to the petitioner. *See, e.g. Burriss*, 513 S.E.2d at 109 n.10 (distinguishing the facts in *Burriss* from *State v. Pickens*, 466 S.E.2d 364, 366 (S.C. 1996), and stating that in the latter case an involuntary manslaughter charge was not warranted because Pickens admitted he shot intentionally); *State v. Tucker*, 478 S.E.2d 260 (S.C. 1996) (setting forth the involuntary manslaughter test, which requires that the act be *unintentional*); *see also State v. Cabrera-Pena*, 605 S.E.2d 522 (S.C. 2004) (involuntary manslaughter charge not warranted where defendant took gun to highly volatile domestic situation and waited for his wife to come out). *Cf. State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003) (involuntary manslaughter charge warranted where evidence was susceptible of conflicting inferences, since defendant stated "I didn't even know I pulled the trigger").

Since as a matter of law an involuntary manslaughter charge was improper, then counsel could not have been deficient nor the petitioner prejudiced by the failure to object.

## II. CROSS-EXAMINATION OF WITNESS

The petitioner's second ground for relief is as follows:

The trial judge erred by refusing to allow defense counsel to impeach wittness James Mayes with the fact charges against him were dropped/dismissed by the Solicitor. Mayes had charges against him for

> resisting arrest while in possession of a deadly weapon and possession with intent to distribute narcotic. The Solicitor dismissed these charges against Mayes prior to his testimony. Mayes then gave testimony highly favorable to the State. Mayes went through great length during his testimony to damage Appellant. He was the only wittness who claimed Petitioner pointed a gun at anyone other than Evans. Mayes was extremely harmful to Appellant's self defense assertion. Mayes even denied links between Evans and narcotics.

The petitioner alleges that he should have been allowed to examine a state's witness on charges dismissed at some unspecified point before trial, pursuant to S.C. R. Evid. Rule 608(c), which allows evidence of "bias, prejudice, or any motive to misrepresent." The petitioner raised this issue at least in some fashion on direct appeal, and the South Carolina Supreme Court rejected it with a memorandum opinion pursuant to Rule 220(b), SCACR. (R. at 414.)

A recitation of the facts of this case can be found in the Brief of Respondent from the direct appeal. (*See* R. at 405-06.) Generally, the victim Sherwood Evans intervened when the petitioner and his girlfriend Jacklyn were arguing over a cable bill. Evans made threats against the petitioner when talking to Jacklyn after the altercation. The petitioner was waiting against a car when James Mayes, the witness at issue in regards to this present claim, and Evans came out to leave. More words were exchanged, and the petitioner pulled out his pistol and shot the victim.

At trial, the judge refused to allow the defense to ask James Mayes about some drug charges and a weapons charge that allegedly had been dismissed at some point:

> MR. ROLLINS: Yes sir, Your Honor. One of their witnesses, James Wilson Mayes, Jr., he was arrested, Your Honor, for manufacturing and possession of a schedule I substance with intent to distribute. That case was dismissed. <u>We would ask the Court to rule if we can ask him has he ever been arrested for that</u>.
>
> THE COURT: For what purpose?
>
> MR. ROLLINS: <u>It goes to prior bad act</u>, Your Honor.
>
> THE COURT: For impeachment purposes, you mean?
>
> MR. ROLLINS: We believe that would be proper impeachment. He also, Your Honor, was charged and dismissed with a resisting arrest with a deadly weapon.

>He also pled guilty on November 26 of this year to two forgeries and received probation.
>
>THE COURT: I would exclude testimony about the drug charge that was dismissed as well as the other. Anything else?

(R. at 36 (emphasis added).)

The petitioner's claim, in this regard, is procedurally barred. A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "An adequate and independent state procedural rule, barring a claim of error in a state collateral-attack proceeding because the defendant had not preserved the claim at trial, will likewise bar that claim on collateral attack in a federal habeas corpus suit, absent cause and prejudice." *See Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977); *Johnson v. Muncy*, 830 F.2d 508 (4th Cir.1987). The same principle will bar federal review, where a state supreme court rejects a defendant's claim on direct appeal for failure to preserve the error at trial. *See Darden v. Barnett*, 1996 WL 7986 (4th Cir. Jan. 8, 1996) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

In this case, the petitioner's attorney argued at trial that the witness's testimony was admissible for impeachment purposes, as a prior bad act. (R. at 36.) On direct appeal, however, he argued that the proposed examination of the witness was admissible under S.C. R. Evid. 608(c) as evidence of bias and favorable treatment of a witness. (R. at 392-99.) Accordingly, the South Carolina Supreme Court dismissed the appeal for failure to properly preserve the error, a firmly established rule. ( R. at 414.) Indeed, any federal constitutional issue would also not be preserved as no such basis was mentioned at trial.[1]

---

[1] Whether or not the petitioner's present habeas claim was raised and rejected on independent state law grounds or simply never raised at all, is immaterial; it is now barred as a result. If the petitioner did not actually present a federal claim to the South Carolina Supreme Court for review, then the claim is still procedurally barred in federal habeas

*See, e.g. State v. McWee*, 472 S.E.2d 235 (1996) (Eighth Amendment challenge not preserved because no constitutional basis was raised at trial).

The Court may excuse the petitioner's procedural default, however, if he can demonstrate either cause for and resulting prejudice from the default, or that he has suffered a fundamental miscarriage of justice. *See Wainwright*, 433 U.S. at 90-91(holding that if the petitioner can show cause for the state procedural default, and prejudice resulting there from, the federal courts can address the issue's merits); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (stating that where a petitioner has suffered a fundamental miscarriage of justice a decision on the merits is appropriate without regard to a procedural default). The petitioner, however, has "not *alleged* or established cause and prejudice, fundamental miscarriage of justice, or actual innocence, which would enable us to consider his claims despite his procedural default."  *See Flood v. Johnson*, 115 Fed. Appx. 164, (4th Cir. 2004) (emphasis added) (citing  *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Muth v. United States*, 1 F.3d 246, 250 (4th Cir.1993).

---

corpus, *see Coleman*, 501 U.S. 722, because the South Carolina state courts would find it procedurally defaulted if the petitioner attempted to raise it now.  *See* S.C. Code Ann. § 17-27-45 (Supp. 1998) (one-year period of limitation on filing of APCR); *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997) (noting that South Carolina requires all grounds for relief to be raised in the first APCR; *Drayton v. Evatt*, 430 S.E.2d 517 (1993) (issues that could have been raised at trial or on direct appeal cannot be raised in an APCR absent a claim of ineffective assistance of counsel); *State v. Lawrence*, 223 S.E.2d 856 (1976) (South Carolina Supreme Court has no jurisdiction to hear an appeal absent a timely filed and served Notice of Appeal).

11

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
United States Magistrate Judge

February 6, 2006
Greenville, South Carolina